# DUNBAR *v.* SCHELLENGER.

---

PATENTS; INTERFERENCE; NEWLY DISCOVERED EVIDENCE; BURDEN OF PROOF; PATENTABILITY; REDUCTION TO PRACTICE; DILIGENCE.

1. The exercise by the Commissioner of Patents of his discretion in refusing to reopen an interference case for the introduction of newly dis-

covered evidence may be the subject of review and correction on appeal, when undoubtedly abused and productive of palpable injustice,—especially when the question has been raised and decided by the Commissioner along with the general question of priority. (Citing *Cross* v. *Phillips,* 14 App. D. C. 228; *Richards v. Meissner,* 24 App. D. C. 305; and *Hammond* v. *Basch,* 24 App. D. C. 469.)

2. It is not error for the Commissioner of Patents to refuse to reopen an interference on the ground of newly discovered evidence, when the only effect of admitting such evidence would be to show that some of the counts were first invented by one not a party to the interference. (Following *Foster* v. *Antisdel,* 14 App. D. C. 552, and *Prindle* v. *Brown,* 24 App. D. C. 114.)

3. This court declined to reverse a ruling of the Commissioner of Patents in an interference case, refusing to reopen an interference, so as to. permit of the introduction in evidence of the testimony of one of the parties given in another interference, which, it was claimed, discredited his testimony in the pending proceeding, not being convinced, after a comparison of the two depositions, that the Commissioner erred in his conclusion.

4. Concurrent decisions of the tribunals of the Patent Office, adverse to the appellant in an interference case, impose upon him the burden of clearly showing error therein.

5. The question of the patentability of the claims of an interference is settled by the allowance of them by the Patent Office, and will not be considered by this court on an appeal from an award of priority by the Commissioner. (Following *Johnson* v. *Mueser, ante,* 61.)

6. *Quære,* whether actual reduction to practice of an invention of a means for operating the supervisory signals of a telephone system is shown where the party claiming to be the inventor failed to test it in a regular working telephone system. (Citing *Macdonald* v. *Edison,* 21 App. D. C. 527; *Paul* v. *Hess,* 24 App. D. C. 463; *Gallagher* v. *Hien,* 25 App. D. C. 77; and *Ocumpaugh* v. *Norton,* 25 App. D. C. 90.)

7. In an interference case, it was *held* that the question of the sufficiency of the actual reduction to practice by the senior party was immaterial, as, having shown conception, he was not lacking in diligence between its date and his filing date, his delay not being great, and his financial condition, coupled with his necessary occupation during the period, furnishing sufficient excuse for his failure to take speedier action.

No. 409. Patent Appeals. Submitted January 25, 1907. Decided February 5, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are stated in the opinion.

*Mr. W. Clyde Jones, Mr. Robert Lewis Ames, Mr. R. S. Taylor, Mr. B. R. Johnson,* and *Mr. Arthur B. Seibold* for the appellant.

*Mr. Charles A. Brown* and *Mr. Lynn A. Williams* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding involving priority of invention of a means for operating the supervisory signals of a telephone system, and was declared between the application of Newton C. Schellenger, filed February 14, 1901, and that of Francis W. Dunbar, filed March 22, 1901.

The issue contains ten counts, as follows:

"1. The combination, with a telephone line, of a source of electricity and a pair of relays adapted to be bridged between the limbs of the talking circuit thereof, a switch at the substation and a switch at the central station for controlling the circuit through said relays, and a signal adapted to be controlled by the conjoint action of said relays.

"2. The combination, with a pair of telephone lines, of an inductive device through which the same are adapted to be united for conversation, a charging source of electricity, and a pair of relays adapted to be bridged between the two limbs of each of said lines, one pair of relays being individual to one of said lines, and the other pair being individual to the other line, switches at the substations and at the central station for controlling the circuit through said relays, and a signal controlled by the conjoint action of each pair of relays.

"3. The combination, with a metallic telephone line free from permanent grounds outside the central office, of a charging current source, a third conductor, a pair of relays at the central office, one of said relays being energized over the telephone line,

and the other over a portion of the talking circuit and the third conductor.

"4. The combination, with a metallic telephone line, of a pair of relays and a charging current source bridged across the line at the central station, a third conductor to which one pole of the current source is connected, both of said relays being adapted to be operated over the metallic telephone line, and one of said relays being adapted to be operated over a portion of said line and third conductor.

"5. The combination, with a metallic telephone line, of an operator's plug and a cord circuit, a source of current and a pair of relays bridged across said circuit, a third conductor connected with one pole of said source, one of said relays being adapted to be operated over the metallic line when the subscriber's telephone is in use, and the other to be operated over a part of the line and said third conductor when the subscriber's telephone is not in use and the operator's plug is connected with the line.

"6. In a telephone system, the combination, with a telephone line, of a source of current and a relay bridged between the two limbs of the talking circuit thereof, a second relay at the central office connected in a circuit including a portion of one side of the talking circuit and means for energizing it, a switch at the substation and a switch at the central station for controlling the circuit through said relays, and a signal controlled by the conjoint action of said relays.

"7. In a telephone system, the combination, with a telephone line, of a source of electricity at the central office, an operator's plug and a pair of relays associated therewith, one of said relays being energized from the said source of electricity as long as the said operator's plug is connected with the said line and over a path having a part coincident with the talking circuit, and the other relay being energized as long as the said operator's plug is connected with the said line and when the subscriber's telephone is in use, and a signal associated with said pair of relays, the circuit of said signal being established by the operation of

the first of said relays, and said signal being rendered inoperative by the operation of the second of said relays.

"8. The combination, with telephone lines extending from subscriber's stations to an exchange, of a cord circuit at the exchange provided with two strands for forming connections between two telephone lines, a pair of relays corresponding to each end of the cord circuit and included in bridge thereof, a source of current for inclusion in circuit with each of said pairs of relays, a supervisory signal for each pair of relays and jointly controlled thereby, switching apparatus for controlling the operation of the relays, and a condenser included in each cord strand between the connections of the relays therewith.

"9. The combination, with telephone lines extending from substations to jacks at an exchange, of a cord circuit at the exchange provided with two strands for forming connections between subscribers' lines, a pair of relays corresponding to each end of the cord circuit and included in bridge thereof, a source of current for energizing the said relays, a supervisory signal for each pair of relays and jointly controlled thereby, switching mechanism at the substations for controlling the operation of one of each pair of relays, means including a jack and a cord-circuit plug inserted in the jack, whereby a closed circuit is established through the remaining relay of each pair, which is independent of the operative position of the substation apparatus, and a condenser included in each cord strand between the connections of the relays therewith.

"10. In a telephone system, an operator's cord circuit, a pair of relays each operated over circuits including portions of the talking circuit, and a supervisory signal having its circuit controlled by the contacts of both of said relays, one of said relays being adapted to normally close the circuit and to be energized over the telephone line when the line is in use, whereby the signal is at that time rendered inert, and the other relay being adapted to normally open the circuit, whereby when the cord circuit is not connected with the line the signal is inert, and when connected with a line in use the signal is displayed."

The Examiner of Interferences held that Dunbar's evidence

established September 17, 1900, as the date of conception of the invention of the issue; but, being of the opinion that Schellenger's clearly showed conception and reduction to practice in August, 1900, priority was awarded to him. He expressed the opinion, also, that, even were the evidence of reduction to practice insufficient, Schellenger's diligence nevertheless entitled him to the benefit of his earlier conception.

The decision reviews the testimony at great length, and contains an elaborate description of the invention as disclosed in the applications of the respective parties. This description seems to be an accurate one, but its insertion would occupy unnecessary space.

After noting an appeal from this decision, Dunbar filed a motion to restore jurisdiction to the Examiner of Interferences in order that he might entertain a motion to reopen the case for the introduction of alleged newly discovered evidence. The evidence consisted of the testimony of Schellenger as a witness, on July 5, and 18, 1905, on behalf of Clausen in an interference between Clausen and Dean, No. 23,797, relating to telephone circuits and signals. To the motion were attached a transcript of said testimony, the affidavits of counsel, and the affidavit of an expert relating to the evidence in connection with the issues, and the evidence in the present case. This affidavit does not recite the issue in *Clausen* v. *Dean,* but contains sketches made by the witness of Clausen's invention, and also undertakes an analysis of the claims of the present issue, and claims that they are readable upon the Clausen structure. The Commissioner transmitted the motion to the Examiner of Interferences for decision. The then Examiner of Interferences had succeeded the one who rendered the award of priority above mentioned. The decision denied the motion. As the admissibility and effect of the testimony recited in the motion have been earnestly contended for throughout the proceedings and on the final hearing, we shall quote liberally from this decision. The Examiner said:

"Dunbar's motion is based upon the allegation that certain testimony given by Schellenger when testifying in behalf of

Clausen in another interference (*Clausen* v. *Dean*, No. 23,797) is to the effect that the invention at issue in this case was disclosed to him by Clausen at a date prior to the date of conception to which Schellenger testified in this interference. An examination of Schellenger's testimony given in the second interference indicates that the disclosure made to him by Clausen did in fact embody the subject-matter of several counts of the above-entitled interference.

"Considerable stress has been laid upon the contention that the interference should be reopened on the ground that the proposed new evidence would affect Schellenger's credit as a witness. In view of the fact that Schellenger and Clausen appear to have worked together in making improvements along the same line, it seems more probable that the discrepancies in Schellenger's testimony in the two cases arose from failure of the attorneys for himself and Clausen to properly limit the claims to their separate inventions. It is established, however, by the testimony of other witnesses, that Schellenger actually reduced the invention to practice before Dunbar. The possibility that Schellenger may not have been the originator of the invention in no way impairs the testimony of the other witnesses to the effect that Schellenger was in possession of the invention and reduced it to practice prior to Dunbar's established date of conception. These facts preclude the possibility of awarding priority of invention to Dunbar.

"For these reasons Schellenger's deposition given in the second interference, even if introduced in the present case, could not affect the award of priority which has been rendered. Had such testimony as that contained in Schellenger's later deposition originally been in this case, it might have led the Examiner of Interferences to direct the attention of the Commissioner, under rule 126, to the fact that a statutory bar existed to the grant of a patent to Schellenger as to certain of his claims. Inasmuch, however, as the determination of the question as to whether or not such bar exists, is an *ex parte* matter, and not within the jurisdiction of the Examiner of Interferences, no good cause exists for reopening the interference for the purpose

of introducing testimony relative to the existence of a statutory bar."

He then cites, and quotes from the opinions in, *Foster* v. *Antisdel,* 14 App. D. C. 552, and *Prindle* v. *Brown,* 24 App. D. C. 114, which hold that a junior applicant cannot overcome the prior date of his opponent by proving that a third party was the first inventor. The decision thereafter proceeds as follows:

"The only possible grounds upon which the evidence in question could be admitted would be that it utterly destroyed the credibility not only of Schellenger, but of all his corroborating witnesses, as to his possession and reduction to practice of the invention prior to the date established by Dunbar. It does not appear that any reason exists for the inference that the variance between the testimony given by Schellenger in the two cases was due to any fraudulent intent on Schellenger's part. However this may be, there appears to be no reason for holding that the testimony given by the other witnesses for Schellenger is impaired by the state of facts brought to light in support of this motion.

"It is also contended that the testimony of Schellenger in the other interference—which testimony it is now sought to introduce in evidence in this interference—should be accepted as an admission against interest, and would justify the holding that Schellenger is not an original inventor. For the reasons that have been stated above and clearly announced by the Commissioner in *Prindle* v. *Brown; supra,* this question is not pertinent to the question of priority of invention as between Schellenger and Dunbar, since it is shown that Schellenger was the first in possession of the invention. This being true, Dunbar could not be adjudged the first inventor, even if it were admitted that Schellenger received his idea from some person other than Dunbar."

On appeal to him, the Commissioner affirmed this decision upon a full review of the question. He was clearly of the opinion that the testimony was inadmissible to show invention by another not a party to the interference. His decision concludes as follows:

"It does not appear that there was any abuse of discretion by the Examiner of Interferences in refusing to reopen the case. If it should appear, upon consideration of the entire record upon appeal, that the decision upon the question of priority would be changed by evidence that Schellenger's testimony is not entitled to full faith and credit, the case may be reopened for further testimony. The Examiner of Interferences, who has considered the entire record, is of the opinion that such reopening is not justified, and no good reason is seen for disturbing his decision upon interlocutory appeal."

The case was then referred to the Examiners-in-Chief to determine the appeal on the question of priority. These affirmed the award to Schellenger. On final appeal to the Commissioner this decision was affirmed. After a careful review of the evidence he said: "Not only is Schellenger entitled to the award of priority on the ground that he was the first to conceive and the first to reduce to practice, but also on the ground that he was exercising reasonable diligence at and before the time when Dunbar entered the field, and up to the time of filing his application."

Upon the question of admitting the evidence contained in the motion he said:

"After the decision of the Examiner of Interferences on the question of priority, and pending an appeal to the Examiners-in-Chief, Dunbar brought a motion to reopen the interference for the purpose of introducing into the record a deposition given by Schellenger in a later interference between different parties, which, it was alleged, showed that Schellenger was not the inventor of certain counts of this interference, and which also, it is alleged, discredited Schellenger, as it contained allegations contrary to those made in the present case. The Examiner of Interferences refused to reopen the case, and upon appeal from that decision I held that the case would be reopened, if at all, only for the admission of evidence discrediting Schellenger's testimony, and that whether it should be so reopened would be determined when the case came before me for final hearing. Upon examination of the deposition in the later in-

terference, it is found that Schellenger testifies that one Henry P. Clausen, under whose direction Schellenger was working while in the employ of the American Electric Telephone Company, was the inventor of a certain circuit which Schellenger referred to as a 'three-relay system.' This circuit is specifically different from the 'four-relay' system, which forms the subject-matter to this interference. Assuming, for the purpose of argument, that some of the counts of this interference are broad enough to cover both of these structures, I am nevertheless convinced that such testimony does not materially lessen the weight to be given to Schellenger's testimony in this interference. It must be remembered that Schellenger was testifying in both instances with respect to specific constructions; in the first interference with respect to a 'four-relay' system, and in the later interference with respect to a 'three-relay' system, whose circuits differed in many respects from the circuits of the 'four-relay' system. In the earlier testimony, Schellenger testified that he constructed a specific device upon a certain date; in his later deposition he testified that Clausen, upon a certain date, set up a different apparatus. There is no inconsistency in these statements. I am convinced that the deposition in the later interference furnishes no substantial basis for believing that the testimony first given was false. The only real effect of admitting this testimony would be to show, possibly, that some of the counts of this interference were first invented by a third party, and not by Schellenger. As stated in a prior decision, in this case, this question is to be considered, if at all, after the final determination of the question of priority."

The appellee has moved to dismiss so much of the appeal as relates to the motion to reopen the case for the consideration of the newly discovered evidence. Whether such an appeal can be entertained at all, though the question has been raised and decided by the Commissioner along with the general question of priority, has never been expressly decided by this court. In *Richards* v. *Meissner,* 24 App. D. C. 305, 309, it was said by Mr. Justice Morris: "The reopening of a cause for the introduction of newly discovered evidence is always a matter for the

trial court, and is in its discretion; and that discretion is not subject to review in a purely appellate tribunal, such as this court is." The evidence was, however, incidentally discussed, and it was said that there was no indication of the abuse of discretion. Reference was also made to the case of *Cross* v. *Phillips,* 14 App. D. C. 228, 237, in which one of the errors assigned was the refusal of leave to amend a preliminary statement. There the court said: "In courts both of law and equity the right to amend is not an absolute one, but rests in the discretion of the Court, and the exercise of this discretion is not reviewable unless it may be in case of its palpable abuse." See also *Hammond* v. *Basch,* 24 App. D. C. 469, 472. In view of the character of these cases, we think that the exercise of discretion in refusing to reopen a case for the introduction of newly discovered evidence might be the subject of review and correction when undoubtedly abused and productive of palpable injustice. Clearly, the Commissioner was right in his action in this instance, on the ground that it is not admissible to show that a third person was, in fact, the first inventor. As regards the effect of the later deposition by way of discrediting the evidence of Schellenger in this case, it is sufficient to say that, after a comparison of the two, with the aid of the elaborate and earnest argument on behalf of the appellant, we are not convinced of error in the final conclusion of the Commissioner.

The question of priority on the record, as submitted, remains to be considered. Each tribunal of the Patent Office, accepting the proof of conception by Dunbar on September 17, 1900, has agreed in holding that Schellenger conceived the invention of the issue and reduced it to practice in August, 1900. These concurrent conclusions, under the settled rule in such cases, impose the burden upon the appellant of showing error therein clearly. This he has failed to do. The several decisions contain fair and careful reviews of the testimony of Schellenger and his corroborating witnesses, and we do not think it important to add anything to the discussion. They appear to have given the proper weight to the evidence of each witness, carefully distinguishing between those fully competent to under-

stand the nature and details of the invention when disclosed
and tested, and those not well informed therein.

As regards the contention of the appellant that "the structure
in interference differs from the prior structure of Roberts in
but two particulars, and all of the claims in issue are readable
directly upon the Roberts structure, except for the limitations
as to these two distinguishing features,"—it is sufficient to say
that, in so far as it appears to raise a question of patentability,
that question has been settled by the allowance of the claims.
*Johnson* v. *Mueser,* Present Term [*ante,* 61].

And in so far as it relates to the necessary elements of Schel-
lenger's construction to answer the test of conception and re-
duction to practice, we think it is fairly met in the decision of
the Examiner-in-Chief as follows:

"The invention in controversy is so fully described in the
decision of the Examiner of Interferences and in the briefs
and applications of the respective parties, that we regard it as
unnecessary to herein explain its details. In its general aspect,
said invention is a modification of or an improvement upon
previously existing means for operating the supervisory (or
electric lamp) signals at the central station of a telephone
system, by means of which signals the operator determines
whether the called subscriber has responded, and whether either
subscriber has concluded the conversation and placed his re-
ceiver upon the switch hook of the telephone. A patent to
one Roberts, No. 777,544, of December 13, 1904, mentioned in
the record, illustrates the prior art. It discloses a telephone
system in which the supervisory signals are controlled by four
relays, two of said relays being disposed in each half of the
apparatus at the exchange, and one of these two relays situated
in a bridge across the cord or talking circuit, while the other
relay is arranged in a local circuit connected with the bridge.
In the apparatus here in controversy both relays are included
in the bridge, and a portion of the cord or talking circuit is
at certain times used as a part of the circuit for one of the
relays. Although the issue does not call for any specific ar-
rangement of the cord circuits and does not require that the

bridge shall be connected with these circuits in any unusual way, or that any particular supplementary devices shall be employed in connection with the system, it is contended on behalf of Dunbar that Schellenger has not carried his invention beyond the experimental stage when, as alleged by him, he set up and tested the apparatus upon which he relies for reduction to practice. It is pointed out that at that time he did not develop a satisfactory 'busy test,' and had not in contemplation any operative means for enabling the operator to automatically cut out the subscriber's bell circuits when connections between the central station and the telephones at the substations are established.

"The objection thus raised is, in our opinion, without weight, for not only does the prior art reveal means which may be used for attaining both of the aforesaid objects, but the combinations covered by the issue possess their own utilities, irrespective of the presence or absence of calling and testing devices of any kind. In other words, the issue is directed to a new and useful invention, which, although it is intended to be an element of a telephone exchange, nevertheless possesses its own characteristic utility."

It may be remarked that had all of the expert tribunals of the office denied the sufficiency of Schellenger's evidence of actual reduction to practice in August, 1900, on account of the character of the structure and the failure to test it in a regular working telephone system, we would not, considering the nature and purpose of the invention, dissent from such a conclusion. *MacDonald* v. *Edison,* 21 App. D. C. 527, 529; *Paul* v. *Hess,* 24 App. D. C. 463, 467; *Gallagher* v. *Hein,* 25 App. D. C. 77, 82; *Ocumpaugh* v. *Norton,* 25 App. D. C. 90, 93. But, as they are well informed in the art, and have concurred in holding the test sufficient, the conditions are not such as to satisfy us that they have erred in such finding.

The question is of no practical importance, however, because we fully agree with them that Schellenger, having shown his conception of the invention, was not lacking in diligence between the date of that conception and the presentation of his applica-

tion.   His delay was not great, and his financial condition,. coupled with his necessary occupation during the period, furnishes a sufficient excuse for his failure to take speedier action.

It follows that the decision of the Commissioner will be. affirmed.   It is so ordered, and the clerk will certify this decision to the Commissioner of Patents as required by law.

*Affirmed.*